JOHN J. BREHER AND OTHERS v. T. L. BEISEKER.[1]

April 24, 1925.

No. 24,494.

**Conduct of parties was practical construction of contract which binds defendant.**

1. The controlling contract obligated defendant, upon default in payment and written notice of rejection by plaintiffs of certain notes, to collect, make them acceptable or purchase them. There was conduct of the parties, in application and partial execution of the contract, showing that they considered the notes rejected and defendant's liability fixed and continuing. *Held*—a practical application and construction of the contract which now prevents defendant from escaping liability because of failure of plaintiffs to give written notice of rejection.

**Interest computed from wrong date.**

2. Defendant's obligation to take over and pay for the notes could not have accrued for at least a year after the date of the contract. His primary liability was limited to $11,000. In awarding a recovery from him of that sum, it was error to allow interest from the date of the contract.

1. See Guaranty, 28 C. J. p. 987, § 145.
2. See Guaranty, 28 C. J. p. 966, § 116 (1926 Anno).

Action in the district court for Hennepin county upon a contract. The case was tried before Baldwin, J., who ordered judgment in favor of plaintiffs. Defendant appealed from an order denying his motion for a new trial. Affirmed.

*Kingman, Cross, Morley & Cant,* for appellant.

*George S. Grimes, Jesse Van Valkenburg* and *Earl J. Maxwell,* for respondents.

STONE, J.

Action upon a contract, treated below as a guaranty. After a trial without a jury, there was a decision for plaintiffs and defend-

[1]Reported in 203 N. W. 518.

ant appeals from an order denying his motion for amended findings or a new trial.

On July 1, 1919, defendant sold all the stock of the First State Bank of Martin, North Dakota, to plaintiffs Breher and Daly and William A. Samels, since deceased. The executrix of the latter has been substituted as a plaintiff in his stead, but for convenience the original purchasers will be referred to as plaintiffs. A part of the transaction was the contract which is the subject of this action. The parties labeled it a "guarantee agreement." Defendant was the first and plaintiffs the "second parties" thereto. The first preliminary recital is of the sale of the stock and the next this:

"Whereas, among the assets of said First State Bank of Martin are found certain bills receivable which second parties regard as unacceptable, and which said first party has, as a party of the said contract of sale of said stock, agreed with said second parties to guarantee payment of to the extent of $11,000 under terms and conditions hereinafter stated."

The contract next states that the items on Exhibit "A" (an attached list of some of the bills receivable of the bank), were regarded by plaintiffs "as doubtful of collection," and went on to say that they should have six months from maturity of each of said notes "in which to investigate thoroughly each of said items and in which to either accept or reject any of said items."

The contract further provides that, in case the purchasers within the periods thus provided shall "accept any of said items, the responsibility" of the defendant "upon the items so accepted shall thereupon cease." The next provision of present importance is as follows:

"In case said second parties shall reject any of said items, they shall within said six months' period notify said first party in writing of the items so rejected. Said first party upon receipt of notice of the rejection of any of said items [shall] have a period of six months after the expiration of said first six months in which to make said item so rejected acceptable to said second parties. And in case he shall be so unable to make any of the same acceptable to

said second parties within the additional period of six months, said first party in such case covenants and agrees with said second parties, and each of them, to purchase from First State Bank of Martin, or Martin State Bank, or any other person or corporation which shall then be the legal holder of any of said items, and to pay therefor the face amount of the items so rejected, together with interest thereon   *   *   *   provided, however, that the limit of liability of said first party hereunder shall in no case exceed the sum of eleven thousand dollars. Said first party further agrees to pay said second parties the amounts that may become due under this guaranty upon demand of the legal holder of each of said items, at any time after the expiration of one year from date of maturity of said items, or if now past due, after the expiration of one year from and after this date, together with interest as aforesaid."

The next provision makes performance of the obligations imposed upon the purchasers a condition precedent to the performance "of this guarantee on the part of the guarantor." But the effect of nonperformance by the purchasers is limited by the agreement, next stated, that thereby the "guarantor shall be released and discharged from any obligations and requirements on the part of the first party which shall be in any event affected by the failure of said second parties."

Contemporaneously with the making of the contract, plaintiffs took charge of the bank, and, except as hereinafter stated, there is no claim of failure of performance on their part. There was seemingly close co-operation in an attempt to collect the questioned paper. It was found below that, of the paper listed on Exhibit "A", there was still much more than $11,000 unpaid and that it is uncollectible, and judgment was accordingly ordered against defendant for $11,000 and interest.

As the notes matured, defendant was immediately notified in writing and there followed the procedure indicated by the finding that, "thereafter defendant undertook   *   *   *   to make the same acceptable to plaintiffs, but neither during the year following the notice of default nor at any time did defendant make said notes good or make the same acceptable to plaintiffs."

There is in the record much of the correspondence between the parties. At no time did defendant or anyone on his behalf treat the contract as other than a guaranty by him of the notes listed by Exhibit "A" and with respect to which default had occurred. Repeatedly, in the letters from his managing agent, are the notes referred to as the ones "guaranteed by Mr. Beiseker." Concerning one of them it was stated that defendant would like to get it "renewed in such a manner that we could be released from our guaranty but if this cannot be done we will renew our guaranty." Over a year after the contract was made, the parties were actively corresponding with a view to getting this "old paper disposed of as per agreement."

1. The defense is put mainly upon the ground that defendant's obligation was not, strictly speaking, that of a guarantor, but that his only duty was to repurchase the notes, up to the limit of $11,000, upon performance by plaintiffs of the conditions imposed upon them, one of which was the duty to notify defendant of the default and again thereafter to give notice of the final rejection of any defaulted note. To sustain that argument requires a holding that notice of rejection was a condition precedent to the liability of defendant instead of merely a means of starting what counsel refer to as the "second six months' period" wherein defendant was, if possible, "to make said item so rejected acceptable to said second parties." We cannot so hold because, as will later appear, defendant was not "affected" adversely or at all as to any of the "obligations and requirements" imposed upon him, by lack of formal written notice of rejection of notes. Failure of performance by plaintiffs, under the very terms of the contract, would be a release of defendant only so far as he was so affected.

Either that conclusion is right or there is an ambiguity in the contract as to whether written notice or rejection was, instead of a mere detail of administration, a condition precedent to any liability of defendant. If there is such ambiguity, and there may be, it is a typical one for solution by reference to the practical treatment accorded its subject matter by the parties themselves in the application of the contract. At this point it is interesting to recur to the provision, already quoted, terminating defendant's "re-

sponsibility" on any accepted notes from the moment of acceptance, it being the suggestion if not the effect of that sentence that until acceptance defendant's responsibility was to continue.

Fortunately for facility of decision, it is established by evidence and findings that the parties themselves have adopted a practical construction which makes untenable defendant's position concerning definite written notice of rejection. That follows from the finding, above quoted, that the defaulted paper was placed with defendant for collection and that he failed to "make said notes good or * * * acceptable to plaintiffs."

The only purpose of the required notice of rejection was to give defendant a final six months' opportunity to make the paper good or acceptable. He has had that and more. The purpose of the notice has been accomplished. The result was a final refusal by plaintiffs to accept. The procedure adopted obviously considered the notice as given. In any event it was a practical construction doing away with the necessity for definite written notice of rejection. The voluminous correspondence contains no suggestion of a termination of defendant's liability as to any one of the notes in controversy by reason of lack of rejection or notice thereof. On the contrary, the notes were treated as rejected and defendant's liability as continuing.

It is clear that such notice was waived by defendant. For defendant it is argued that the complaint did not allege waiver. That is true. A waiver might well have been pleaded; but the situation is still open to the view adopted below, as we read the findings, that the contract was so construed by the parties as to make notice of default, plus defendant's taking over of bad paper for collection, amount to a final rejection by plaintiffs.

There is nothing in Plano Mnfg. Co. v. Klatt, 87 Minn. 27, 91 N. W. 22, suggesting a contrary result here. That was a case where the plaintiff had the right within 90 days from their receipt from defendant, its agent, to reject notes tendered by the latter in settlement. There was no rejection nor indication of rejection within the stated period and it was considered that plaintiff's conduct amounted to "an absolute acceptance of the notes on its part" re-

lieving defendant from further liability. If that reasoning applies here, it favors the conclusion that defendant's taking over the defaulted notes for collection and his failure to collect or make them acceptable amounted to a rejection thereof by plaintiffs. Here the parties themselves considered that rejection had taken place and it is now too late for either of them to ask judicial consideration to adopte a contrary view.

We have not been much concerned with the question of how the contract should be designated—one of guaranty or one of purchase. At its making, the parties considered it one of guaranty. They so labeled it and caused it to refer to defendant repeatedly as the "guarantor." Its dominant and only purpose was to impose upon defendant the loss on the listed paper within the limit of $11,000. It doesn't matter much what we call the contract, because the purpose was to be effectuated by defendant's purchase of the paper as, after the periods allowed for attempts at collection or to make it "acceptable," it was rejected by plaintiffs. Such rejection made operative, after the lapse of six months, defendant's obligation. The record makes it clear that, in the manner already indicated, paper aggregating more than $11,000 was rejected, and, what is more important, that the parties so considered it at the time. Defendant himself treated plaintiffs' rejection as a fact accomplished. He cannot now change front. To permit him to do so and avoid liability would reverse the executed decision of the parties themselves that the paper had been rejected and thereby the one purpose of the contract would be frustrated. The result desired by defendant is impossible, not only because it would defeat the contract, but also because it would prevent the application which, in its practical operation and before any controversy arose, the parties themselves irrevocably gave it.

2. This disposes of all the assignments of error requiring discussion, save one challenging the allowance to plaintiffs of interest from the date of the contract, July 1, 1919. There we think there is error. Defendant's initial or principal liability was limited in amount to $11,000. It did not accrue, in that or any other sum, when the contract was signed; nor as it did accrue thereafter was

it to relate back to that event. It certainly did not attach or become the subject of action during the first six months wherein plaintiffs were to attempt collection of defaulted paper. In like manner, it could not attach or become actionable within the second six months allowed defendant for his effort to collect or make defaulted paper "acceptable." During the latter period, even to the last day (assuming now that as to all of the notes the last six months was coterminous), defendant was entitled to a discharge from liability upon payment by him to plaintiffs of the $11,000 and no more. Had he made such a tender, plaintiffs would not have been entitled to interest from July 1, 1919. That is because defendant's primary liability was limited to $11,000 and it was to accrue in deferred fashion as already stated.

Under that view of the contract, the earliest date from which interest can be computed is July 1, 1920. However, we decline to modify the order for judgment here because the precise question of the date from which interest accrued was not presented to the trial court. It is so asserted by counsel for respondent and the record contains nothing in refutation of that assertion. Defendant's motion for a new trial was accompanied by 32 specifications of error. Still there was no criticism of his being charged with interest from the earlier rather than the later date. It is rather late now to adopt a theory of the case, even on this subordinate point, so radically different from the one on which the case appears to have been tried. In that situation, we consider that the ends of justice do not require a modification here but rather that defendant have leave to apply to the district court for a modification of the conclusions of law and order for judgment so that he will be charged with interest from July 1, 1920. The leave, if applied for, will not be denied.

Affirmed.